UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **WANGQIONG77@OUTLOOK.COM** and **CHINA_VIKI@HOTMAIL.COM** THAT ARE STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION USA | Case No.   5:22-MJ-5288<br><br>Filed Under Seal |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION**

I, Chelsea Holliday, being first duly sworn, hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts stored at premises owned, maintained, controlled, or operated by Microsoft Corporation USA, an electronic communications service and/or remote computing service provider headquartered at 1 Microsoft Way, Redmond, WA 98052. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of applications for a warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft Corporation USA to disclose to the government records and other information in its possession pertaining to the subscriber(s) or customer(s) associated with the accounts, including the contents of communications.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in this capacity since 2018. I am currently assigned to the Louisville Division of the FBI and have primary investigative responsibility for white collar crimes and public corruption violations. I am trained and authorized to investigate the offenses alleged herein. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 1956 and 1343, and I am authorized by the Attorney General to request a search and seizure

warrant. Before becoming a special agent, I was employed as a deputy sheriff and investigative agent by the Brevard County Sheriff's Office in Florida. I have experience investigating fraud violations and have been involved with investigations in which the subjects that committed financial fraud violations were successfully prosecuted. As a federal law enforcement officer, I am authorized to execute search and seizure warrants issued under Rule 41 of the Federal Rules of Criminal Procedure.

3. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 ("Wire Fraud") and 18 U.S.C. § 1956 ("Money Laundering") have been committed by unknown persons. Among other things, there is probable cause to believe that the user or users of the email accounts[1] **wangqiong77@outlook.com** and **china_viki@hotmail.com** defrauded an elderly couple out of $373,700 via a tech support scam. There is probable cause to believe that a search of the information described in Attachment A will find evidence, instrumentalities, contraband, and/or fruits of these crimes, as further described in Attachment B.

4. The matters set forth in this affidavit are either known personally to me or were related to me by other persons acting in their official capacities as law enforcement officers or employees of both domestic and foreign law enforcement agencies. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

---

[1] On February 23, 2022, the FBI requested that Microsoft Corporation USA preserve the subject email accounts (Microsoft Corporation USA reference numbers: GCC-1842309-D6L3S2 and GCC-1842308-S3L9J0). On July 1, 2022, that preservation request was extended.

**JURISDICTION**

5.      The investigated offenses occurred in part in Woodford County, in the Eastern District of Kentucky. This Court therefore has jurisdiction to issue the requested search and seizure warrant on Microsoft Corporation USA LLC, because it is "a court of competent jurisdiction," specifically "a district court of the United States (including a magistrate judge of such a court) . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PROVIDER INFORMATION**

6.      Microsoft Corporation USA is the provider of the internet-based accounts identified as **wangqiong77@outlook.com** and **china_viki@hotmail.com**. Microsoft Corporation USA provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online. Microsoft Corporation USA accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Microsoft Corporation USA services, such as instant messages and remote photo or file storage. Based on my training and experience, I know that Microsoft Corporation USA allows subscribers to obtain accounts by registering on Microsoft Corporation USA's website. During the registration process, Microsoft Corporation USA asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment. Microsoft Corporation USA typically does not verify subscriber names. However, Microsoft Corporation USA does verify the e-mail address or phone number provided.

7.      Once a subscriber has registered an account, Microsoft Corporation USA provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's

username.  Microsoft Corporation USA subscribers can also use that same username or account in connection with other services provided by Microsoft Corporation USA.

8. In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a Microsoft Corporation USA account can be permanently stored in connection with that account, unless the subscriber deletes the material.  For example, if the subscriber does not delete an e-mail, the e-mail can remain on Microsoft Corporation USA's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to exist on Microsoft Corporation USA's servers for a certain period of time.

9. A subscriber's Microsoft Corporation USA account can be used not only for e-mail but also for other types of electronic communication, including instant messaging. Depending on user settings, user-generated content derived from Microsoft services is normally stored on Microsoft Corporation USA's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on Microsoft Corporation USA's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Microsoft Corporation USA's servers for a certain period of time.  Furthermore, a Microsoft Corporation USA subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Microsoft Corporation USA's servers.  Based on my training and experience, I know that evidence of who controlled, used, and/or created a Microsoft Corporation USA account may be found within such computer files and other information created or stored by the Microsoft Corporation USA subscriber.  Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

10. Based on my training and experience, I know that providers such as Microsoft Corporation USA also collect and maintain information about their subscribers, including information about their use of Microsoft Corporation USA services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as Microsoft Corporation USA also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Microsoft Corporation USA typically collect and maintain location data related to subscriber's use of Microsoft Corporation USA services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

11. Based on my training and experience, I know that providers such as Microsoft Corporation USA also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Microsoft Corporation USA in order to track what devices are using Microsoft Corporation USA's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier

("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Microsoft Corporation USA accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Microsoft Corporation USA account.

12. Based on my training and experience, I know that providers such as Microsoft Corporation USA use cookies and similar technologies to track users visiting Microsoft Corporation USA's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Microsoft Corporation USA. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as Microsoft Corporation USA may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Microsoft Corporation USA account and determine the scope of criminal activity.

13. Based on my training and experience, I know that Microsoft Corporation USA maintains records that can link different Microsoft Corporation USA accounts to one another, by

virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Microsoft Corporation USA accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Microsoft Corporation USA account.

14. Based on my training and experience, I know that subscribers can communicate directly with Microsoft Corporation USA about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Microsoft Corporation USA typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

15. In summary, based on my training and experience in this context, I believe that the computers of Microsoft Corporation USA are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Microsoft Corporation USA subscribers), as well as Microsoft Corporation USA-generated information about its subscribers and their use of Microsoft Corporation USA services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Microsoft Corporation USA with false information about

their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

16. As explained above, information stored in connection with a Microsoft Corporation USA account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Microsoft Corporation USA account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by Microsoft Corporation USA can show how and when the account was accessed or used. For example, providers such as Microsoft Corporation USA typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the Microsoft Corporation USA account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the Microsoft Corporation USA

account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## PROBABLE CAUSE

17. The United States government is investigating unidentified individuals for violations of, inter alia, 18 U.S.C. § 1343 ("wire fraud") and 18 U.S.C. § 1956 ("money laundering") (collectively, the "Specified Federal Offenses") involving a relatively new scam now commonly referred to as a "tech support scam" in which subjects pose as employees with technology companies such as Microsoft.

18. On February 4, 2022, the FBI received a complaint from a local financial institution regarding an elderly couple (hereafter "Victims") who fell victim to a financial scam and wired a total of $373,700 to a bank in California. The Victims are residents of Versailles, Kentucky. The scammers called the Victims and claimed to be employees with Microsoft and Community Trust Bank, the Victims' bank. The scammers informed the Victims that their accounts had all been "hacked" and they needed to move their money to keep it "safe." The scammers communicated with the Victims using two Voice over Internet Protocol (VoIP) phone numbers: 725-666-6416 and 215-814-0044.

19. Believing that they were communicating with associates of Microsoft, the Victims allowed the scammers to have remote access to their personal laptop and provided usernames and passwords for their online banking and email accounts. At the direction of the scammers, one of the Victims opened a BAM Trading Services, Inc. (dba "Binance.us") cryptocurrency account and sent two wires to the Binance.us correspondent bank located in California, Silvergate Bank. The

first wire was on January 13, 2022, for $53,700 and the second was on February 1, 2022, for $320,000, totaling $373,700. The banking details for the transactions are below:

    Sending Bank: Community Trust Bank

    Receiving Bank: Silvergate Bank

    Receiving Bank Routing Number: XXXXX6803

    Receiving Bank Account Number: XXXXXX1295

    Account Name: BAM Trading Services, Inc.

20. According to records obtained through legal subpoena, an account at BAM Trading Services, Inc. ("Binance.us") was opened in the name of one of the Victims on January 13, 2022. The account was funded by the two wire transfers from the Victim's Community Trust Bank account previously mentioned: 1) $53,700 sent on January 13, 2022, and 2) $320,000 sent on February 1, 2022. According to the Trade History Report provided by Binance.us, these funds were used to purchase a total of 9.7264086 BTC (aka "Bitcoin"), 1.2535402 BTC on January 17, 2022, and 8.4728684 BTC on February 2, 2022. The balance of BTC was subsequently withdrawn through the following transfers:

| Date | Amount | Currency | Receiving Address |
|---|---|---|---|
| 1/17/2022 | 1.25304024 | BTC | bc1qyjzennmqmkd3tzt4ulfr7s6d3ppmtztuvmk5pu |
| 2/2/2022 | 8.47236843 | BTC | bc1qrx3ksf39ester7ajm4q50vj6wcxv20x55a0pew |

21. On February 2, 2022, at 14:26 (EST) 8.47236843 BTC was withdrawn from the Victim's Binance.us account and deposited to address bc1qrx3ksf39ester7ajm4q50vj6wcxv20x55a0pew ("**bc1qrx**"). At the time of this transaction, the 8.47236843 BTC had a value of $317,927.12 USD. [Reference Transaction Hash: e2bc07fd956ece6fcf15170303592563ca9036f9a9ee46f25474152b31163c61]

22.     According to open-source analysis of the BTC blockchain, **bc1qrx** has transacted two times on the blockchain, the first being the receipt of 8.47236843 BTC from the Victim's Binance.us account on February 2, 2022, at 14:26 (EST), the second occurring on February 3, 2022, at 11:48 (EST) transferring the 8.47236843 BTC to the following addresses:

| Address | Amount |
| --- | --- |
| 13t3vSrTNX5bf1t4cr3meCKHSEHSUY69KL ("**13t3vSr**") | 6.00000000 BTC |
| bc1qmwvtwwjwzeg7cthqqmpfdaq9wpy865m0hlkcpp ("**bc1qmw**") | 2.47235725 BTC |

[Reference Transaction Hash: 27f11018c501362c42a86634618df9ee2a1f7474a240435174af21e298431c71]

23.     According to open-source analysis of the BTC blockchain, **bc1qmw** has transacted two times on the blockchain, the first being the receipt of 2.47235725 BTC from **bc1qrx** on February 3, 2022, at 11:48 (EST), the second occurring on February 4, 2022, 7:38 EST transferring the 2.47235725 BTC to the benefit of **13t3vSr**. Therefore, the total BTC from the Victim's Binance.us account transferred to the benefit of **13t3vSr.** [Reference Transaction Hash: b7045b2108927cf55ad7431ea2983255dc128f255b516b5d986643ff9ba594a4]

24.     According to records obtained from Binance.com through legal subpoena, **13t3vSr** belongs to the following account owner:

User ID: 163402086
Email: wangqiong77@outlook.com
Name: Wang Qiong

25.     The above referenced transfers of Victim funds to the benefit of **13t3vSr** were traced to the Binance Deposit History report for User ID: 163402086:

| Transaction ID | Create Time (UTC) |
| --- | --- |
| 27f11018c501362c42a86634618df9ee2a1f7474a240435174af21e298431c71 | 2022-02-03 16:52:54 |
| b7045b2108927cf55ad7431ea2983255dc128f255b516b5d986643ff9ba594a4 | 2022-02-04 12:48:48 |

26. The 6.00000000 BTC obtained at 2022-02-03 16:52:54 UTC and 2.47235725 BTC obtained as part of the transaction on 2022-02-04 12:48:48 UTC were converted from BTC to USDT (aka "Tether") through the following transactions:

| BTC Quantity | Amount (USDT) | Time |
|---|---|---|
| 6.00000000 | 220,560.00 | 2022-02-03 17:24:56 |
| 5.00000000 | 189,750.00 | 2022-02-04 12:52:38 (includes 2.47235725 BTC of Victim funds) |

27. Following conversion to USDT, User ID: 163402086 processed the following withdrawal transactions transferring the USDT obtained with Victim funds to destination address **TAC7Rf**MkmKbeXqNgwEFyndEdYNKEN8xVD1 ("**TAC7Rf**"):

| Amount (USDT) | Transaction ID | Time (UTC) |
|---|---|---|
| 220,339.2552 | d466a4e37a43788a10fa0b329292686e8b39654e9b05046940780cd324ac86cb | 2022-02-03 17:26:45 |
| 189,554.2773 | 5df2da008dc5f577e469d817f3fa25cf3a0786aa9d3d7dc160b356a74dd18c4b | 2022-02-04 11:39:12 |

28. According to open-source analysis of the USDT blockchain, address **TAC7Rf** received the above transfers from Binance User ID: 163402086, and then transferred the value out to the following USDT addresses:

| Transaction ID | From | To | Time (EST) | Amount (USDT) |
|---|---|---|---|---|
| **5d3196** | **TAC7Rf** | **TEov3L**8ifkwpxfS1dekvv3apUmFNHmLcZp | 2/4/2022 1:59 | 220,339.00 |
| **5df2da** | **TAC7Rf** | **TZ9hBZ**59WaWnzeGzFkY3oRoT29ymdfpq1q | 2/4/2022 7:00 | 100,000.00 |
| **36aca4** | **TAC7Rf** | **TLqKnj**hbWBiM77NZsQxaVZ4Hj6pbPz3ti4 | 2/4/2022 8:18 | 189,459.00 |

Transaction ID
5d319608af53610fa4b7c2129725649836505eda28729a70053b433e7bb47e75 ("**5d3196**")
5df2da008dc5f577e469d817f3fa25cf3a0786aa9d3d7dc160b356a74dd18c4b ("**5df2da**")
36aca4fbe386a2ea57aa755aa421254d4fdca929c042f4d0d42f2ef33cfde11f ("**36aca4**")

29. According to open-source analysis of the USDT blockchain, address TEov3L8ifkwpxfS1dekvv3apUmFNHmLcZp ("**TEov3L**") received 220,339.00 USDT from address **TAC7Rf** through transaction **5d3196** and then subsequently transferred the same amount to address TVQAWBSwUVbCvnWEzzQ2vfFM8HYFAY2VzP ("**TVQAWB**"):

| Transaction ID | From | To | Time (EST) | Amount (USDT) |
|---|---|---|---|---|
| **f9cb68** | **TEov3L** | **TVQAWB** | 2/4/2022 2:57 | 220,339.00 |

Transaction ID
f9cb68c45e89c42b565c342b8ea9ed8437c9d13e60127e15925c055fa5ec3f87 ("**f9cb68**")

30. According to records obtained from Binance.com through legal subpoena, on February 17, 2022, User ID: 163402086 had a remaining balance of **270,781.2876 USDT**.

31. According to records obtained from Binance.com through legal subpoena, USDT address TZ9hBZ59WaWnzeGzFkY3oRoT29ymdfpq1q ("**TZ9hBZ**") belongs to the following account owner:

> User ID: 296003450
> Email: china_viki@hotmail.com
> Name: Cheng Caiyun

32. The above referenced transfer of USDT to the benefit of **TZ9hBZ** was traced to the Binance Deposit History report for User ID: 296003450.

| Transaction ID | Create Time (UTC) |
|---|---|
| 53a47d25bc2253474baa5a1170c3aeb55661c2277ef3855d3f35aae97f2a3c32 | 2022-02-04 12:01:02 |

33. According to records obtained from Binance.com through legal subpoena, on February 17, 2022, User ID: 163402086 had a remaining balance of **13,550.9135 USDT**.

34. The tracing of Victim funds completed by the FBI showed a rapid exchange and movement of assets which is commonly indicative of money laundering. Furthermore, the exchange of USD into cryptocurrencies makes the transfer of Victim funds faster, and in many cases, makes the identification of case subjects more difficult for law enforcement.

35. Subsequent to the aforementioned tracing of Victim funds, the FBI obtained a seizure warrant for $338,388.47 USD[2] that was served to Binance.com in April 2022. This seizure included four subject accounts at Binance.com that received Victim funds.

---

[2] The value of the funds seized from Binance.com by the FBI in April 2022 was $338,388.47 USD on the date of seizure, however, that value is subject to change based on the appreciation/depreciation of Bitcoin and Tether.

36. Records were obtained via legal process and formal request for the following four Binance.com subject accounts that received Victim funds, who were subject to the seizure warrant:

   a. Name: Wang Qiong
      User ID: 163402086
      Email: **wangqiong77@outlook.com**
      Name in Chinese: 王琼
      DOB: 7/8/1982

   b. Name: Cheng Caiyun
      User ID: 296003450
      Email: **china_viki@hotmail.com**
      Name in Chinese: 程彩云
      DOB: 4/13/1982
      Phone: +8615924240742

   c. Name: Kamal Das
      User ID: 387998967
      Email: kamalkumar111222@yahoo.com
      DOB: 2/25/1988
      Indian Driver's License Number: BR07 20080003599

   d. Name: Harish Giri
      User ID: 355266437
      Email: prateekmarwah921@gmail.com
      DOB: 10/05/1989
      Phone: +919650872156
      Indian ID Number: 874557412522

37. Officials with Binance.com advised that any withdrawal request will trigger an e-mail verification code, which is required to process the withdrawal. The only exception to this is if the customer had enabled a process called Application Programming Interface (API). However, the records from Binance did not indicate that any of the subjects had enabled this feature. Furthermore, officials with Binance.com also stated there will be emails at account set up or any

time the user makes a change to security settings, passwords, etc. According to the Binance.com web page, Binance.com customers use an email account to log into their Binance.com account and customers must also verify their account using a valid email address.

38. Access logs for the four subject accounts were obtained from Binance.com via legal process. The access logs indicated that each subject account had a setting enabled on their account which required a "security check" before spot deposits to and withdrawals from their accounts could occur. Binance.com advised this security check involved an email being sent to the subject's email account on file.

39. Internet Protocol (IP) logs were obtained from Binance.com for the four identified subject accounts that initially received Victim funds. Open-source research of the IP address activity for the subject accounts showed the vast majority resolve back to India and China. A sampling of IP address activity for each subject account is listed below:

a) Wang Qiong, Binance User ID: 163402086

| IP Address | Location | Date |
|---|---|---|
| 106.193.225.225 | Boisar India | 2022-02-16 |
| 49.36.183.105 | Noida India | 2022-02-07 |
| 49.36.183.105 | Noida India | 2022-02-05 |
| 49.36.183.105 | Noida India | 2022-02-04 |
| 49.36.183.105 | Noida India | 2022-02-03 |
| 106.202.36.221 | Noida India | 2022-02-03 |
| 49.36.183.105 | Noida India | 2022-02-01 |
| 49.36.183.253 | Noida India | 2022-01-29 |
| 106.223.45.135 | Delhi India | 2022-01-29 |
| 49.36.181.15 | Rohtak India | 2022-01-28 |

b) Cheng Caiyun, Binance User ID: 296003450

| | | |
|---|---|---|
| 39.187.212.85 | Jinhua China | 2022-02-02 |
| 112.17.247.23 | Hangzhou China | 2022-01-31 |
| 211.90.236.231 | Hangzhou China | 2022-01-30 |
| 124.160.220.138 | Hangzhou China | 2022-01-29 |
| 124.160.220.176 | Hangzhou China | 2022-01-27 |
| 115.212.211.138 | Jinhua China | 2022-01-27 |
| 223.104.244.152 | Hangzhou China | 2022-01-26 |
| 223.104.246.139 | Beijing China | 2022-01-25 |
| 223.104.247.121 | Hangzhou China | 2022-01-23 |
| 125.113.143.147 | Jinhua China | 2022-01-22 |

c) Kamal Das, Binance User ID: 387998967

| | | |
|---|---|---|
| 49.36.188.163 | Delhi India | 2022-03-10 |
| 205.254.175.85 | New Delhi India | 2022-03-09 |
| 49.36.188.163 | Delhi India | 2022-03-05 |
| 205.254.175.250 | New Delhi India | 2022-03-05 |
| 49.36.188.119 | Delhi India | 2022-03-02 |
| 205.254.175.20 | New Delhi India | 2022-02-28 |
| 43.249.185.201 | Panaji India | 2022-02-04 |
| 49.36.188.163 | Delhi India | 2022-01-20 |

d) Harish Giri, Binance User ID: 355266437

| | | |
|---|---|---|
| 110.225.84.255 | New Delhi India | 2022-01-29 |
| 49.36.189.24 | New Delhi India | 2022-01-29 |

16

| | | |
|---|---|---|
| 117.97.228.237 | New Delhi India | 2022-01-28 |
| 205.254.175.250 | New Delhi India | 2022-01-27 |
| 49.36.189.24 | New Delhi India | 2022-01-27 |
| 223.225.39.176 | Noida India | 2022-01-27 |
| 110.225.86.226 | Delhi India | 2022-01-24 |
| 49.36.189.132 | New Delhi India | 2022-01-24 |
| 110.225.86.226 | Delhi India | 2022-01-24 |
| 106.210.102.1 | Noida India | 2022-01-21 |

40. The Victims advised that the scammers communicated with them using two phone numbers: 725-666-6416 and 215-814-0044. The FBI identified these phone numbers as VoIP (Voice over Internet Protocol) numbers using a law enforcement database. In my training and experience, individuals committing fraud violations routinely utilize VoIP phone numbers to disguise their identities. VoIP services also make it easy for individuals committing fraud violations to routinely change their phone numbers to further avoid detection by law enforcement. According to records obtained through legal process from TextNow, the registration IP address for 725-666-6416 and 215-814-0044 was 112.196.93.106 (2022-01-07 13:58:03 UTC and 2022-01-14 18:17:22 UTC, respectively). According to open-source records, this IP address resolves to Quadrant Televentures Limited, IN (Chandigarh, India).

41. In February 2022, another victim in California reported to the FBI that he was also scammed out of $196,800 via a very similar scam in which "Microsoft" told him his IP address was detected on the dark web so he had to "protect" all of his accounts and move his money. The scammers in this scheme also used the VoIP number 215-814-0044 to communicate with this victim.

42. Finally, in my training and experience, I know evidence of user attribution can be found within records stored on the accounts, such as location history, search and browsing history, and documents created and stored on the account. Evidence of criminal conduct is also found in these records. For example, individuals who perpetrate tech support scams research their targets to impersonate local law enforcement and bank personnel.

43. Accordingly, there is probable cause to believe that the Specified Federal Offenses have been committed, and that evidence of those offenses will be found within records stored on the subject accounts.

## EXECUTION OF THE WARRANT

44. Microsoft Corporation USA has access to information about the accounts **wangqiong77@outlook.com** and **china_viki@hotmail.com.** Thus, I anticipate executing this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Microsoft Corporation USA to disclose records and other information (including the content of communications) to the government, as particularly described in Section I of Attachment B.

45. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B. The examination may require techniques including, but not limited to, computer-assisted scans, that might expose many parts of the data to human inspection in order to determine whether it is evidence described by the warrant.

46. This application seeks a warrant to search all responsive records and information under the control of Microsoft Corporation USA, a provider subject to the jurisdiction of this court, regardless of where Microsoft Corporation USA has chosen to store such information. The

government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Microsoft Corporation USA's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

## CONCLUSION

47.     Based on the facts set forward in this affidavit, there is probable cause to search information associated with the Microsoft Corporation USA accounts: **wangqiong77@outlook.com** and **china_viki@hotmail.com** as described in Attachment A, for evidence and instrumentalities of crimes, as described in Attachment B.

48.     I request that the Court issue the proposed search warrant.  Because the warrant will be served on Microsoft Corporation USA, which will then compile the requested records at a time convenient to it within 14 days of the execution of the search warrant, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.  Under 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

49.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/s/ Chelsea Holliday

Chelsea Holliday
Special Agent
Federal Bureau of Investigation

Attested to by applicant per FRCrP 4.1 by reliable electronic means on this 16th day of August, 2022.

*Matthew A. Stinnett*
HONORABLE MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE